**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

  v.                                  **CRIMINAL NO. 1:19CR19-1
                                                (Judge Keeley)**

**TERRENCE D. MARSH,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING ALL
OF DEFENDANT'S PRETRIAL MOTIONS [DKT. NO. 35]**

On April 17, 2019, the defendant, Terrence D. Marsh ("Marsh"), filed five motions, including (1) for change of venue, (2) to sever, (3) for speedy trial, (4) for subpoena powers, and (5) to dismiss (Dkt. No. 35). The Court will address each below.

### I. BACKGROUND

On February 7, 2019, the United States named Marsh in a criminal complaint, alleging that he conspired to distribute heroin, cocaine base, and a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii), and possessed with intent to distribute a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) (Dkt. No. 1). Marsh was arrested four days later and made his initial appearance the following day (Dkt. Nos. 6, 7). After a preliminary hearing and detention hearing, United States Magistrate Judge Michael John Aloi

found probable cause and detained Marsh pending his indictment and trial (Dkt. No. 14).

Less than a month later, on March 5, 2019, a grand jury returned a seven-count indictment, charging Marsh as follows:

| | |
|---|---|
| Count One: | Conspiracy to Possess With Intent to Distribute and Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii); |
| Count Two: | Aiding and Abetting Possession With the Intent to Distribute Methamphetamine within 1000 Feet of a Protected Location, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 860(a); |
| Count Three: | Aiding and Abetting Possession With the Intent to Distribute Heroin within 1000 Feet of a Protected Location, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a); |
| Count Four: | Aiding and Abetting Possession With the Intent to Distribute Fentanyl within 1000 Feet of a Protected Location, in |

|  |  |
|---|---|
|  | violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a); |
| Count Five: | Aiding and Abetting Possession With the Intent to Distribute Hydrochloride within 1000 Feet of a Protected Location, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a); |
| Count Six: | Aiding and Abetting Possession With the Intent to Distribute Cocaine Base within 1000 Feet of a Protected Location, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a); and |
| Count Seven: | Aiding and Abetting Possession of Firearm in Furtherance of Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) (Dkt. No. 16). |

After Marsh made his initial appearance on the Indictment and was arraigned (Dkt. No. 24), the Court issued an Initial Scheduling Order, setting this case for trial beginning on May 20, 2019 (Dkt. No. 27). Marsh then filed his pretrial motions on April 17, 2019 (Dkt. No. 35), and the Government filed its response on April 24,

**MEMORANDUM OPINION AND ORDER DENYING ALL
OF DEFENDANT'S PRETRIAL MOTIONS [DKT. NO. 35]**

2019 (Dkt. No. 38). After reviewing the parties' briefs, it is clear that Marsh's motions lack merit.

## II. DISCUSSION

A.   Motion for Change of Venue

Marsh argues that a change of venue is appropriate because of "adverse pre-trial publicity; an impartial panel cannot be seated given the current West Virginia opiates abuse epidemic and the strong opinions it generates; and [Marsh] being an African-American defendant where his jury panel will consist entirely of Whites" (Dkt. No. 35 at 1).

Under Federal Rule of Criminal Procedure 21(a), on the defendant's motion, courts must "transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." "The burden rests on [Marsh] to establish a reasonable likelihood of prejudice should he proceed to trial in this district." United States v. Partin, 320 F. Supp. 275, 279 (E.D. La. 1970) (citation omitted); see also 2 Charles Alan Wright et al., Federal Practice & Procedure § 343 (4th ed. 2019). But this

"burden is substantial." Partin, 320 F. Supp. at 279; see also Wright et al., supra, § 343.

Here, Marsh has plainly failed to satisfy this substantial burden. Although he suggests that there has been "adverse pre-trial publicity," his motion cites none (Dkt. No. 35). Even if it had, "[t]he mere fact that the defendant received publicity by itself is not sufficient to require a change of venue." United States v. Woods, 486 F.2d 172, 174 (8th Cir. 1973) (citation omitted).

Similarly, Marsh offers no evidence to suggest that the opioid epidemic in West Virginia has created a community-wide hostility towards defendants who allegedly commit drug-related crimes. Even were there potential jurors fitting that criteria, voir dire will identify these jurors and allow them to be excused for cause. See United States v. Mandel, 415 F. Supp. 1033, 1052-53 (D. Md. 1976) (concluding voir dire is effective means of determining jury prejudice before granting motion for change of venue). Finally, Marsh's reliance on the "dearth of African-Americans in the jury pool" is unavailing because he is "not entitled to a jury of any particular composition." United States v. Morton, 443 Fed. App'x 775, 778-79 (4th Cir. 2011) (citations omitted).

Accordingly, the Court **DENIES** Marsh's motion for change of venue (Dkt. No. 35).

**B.    Motion to Sever**

Marsh argues that severance is proper under Federal Rule of Criminal Procedure 14(a) because it is likely that he and his co-defendants "will raise antagonistic or mutually exclusive defenses" (Dkt. No. 35 at 2). In addition, he insists that the evidence that will be admitted against his co-defendants has "no relevance or materiality" to him, and he will be denied his Sixth Amendment confrontation rights. Id.

Under Rule 14, courts may consider severing the defendants' trials if a joint trial "appears to prejudice a defendant or the government . . . ." Fed. R. Crim. P. 14(a). However, the Fourth Circuit has long made clear that, "[b]arring special circumstances, individuals indicted together should be tried together." United States v. Brugman, 655 F.2d 540, 542 (4th Cir. 1981). Indeed, "[t]here is a presumptive expectation that co-defendants will be tried together unless the joinder 'deprives the defendants of a fair trial and results in a miscarriage of justice.'" United States v. Nida, No. 2:18-cr-00285, 2019 WL 384954, at *1 (S.D. W. Va. Jan. 30, 2019) (quoting United States v. Becker, 585 F.2d 703, 706 (4th Cir. 1978)). "The party moving for severance must demonstrate that actual prejudice would result from the joinder; a mere showing that a separate trial would offer a better chance of acquittal is

insufficient." Id. (citing United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995)).

Here, Marsh has failed to demonstrate actual prejudice. He has not identified or explained how his anticipated defense conflicts with that of his co-defendants (Dkt. No. 35 at 1-2). Even if he had, mutually exclusive or antagonistic defenses do not—alone—mandate severance under Rule 14. Zafiro v. United States, 506 U.S. 534, 538 (1993) (rejecting argument to "adopt a bright-line rule, mandating severance whenever codefendants have conflicting defenses"). Quite the contrary. "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Id. at 538-39 (emphasis added) (citations omitted).

Marsh's relevancy argument is unpersuasive. He not only fails to identify what this evidence is and explain how it is ostensibly irrelevant or immaterial to his guilt, but also ignores the fact that he and his co-defendants are charged in each count of the seven-count indictment (Dkt. Nos. 27, 35). Indeed, if Marsh and his co-defendants together committed the same crimes, then all of the incriminating evidence would likely be the same.

7

Nor has Marsh explained how a joint trial would violate his Sixth Amendment right to confrontation. Although he has indicated that he may wish to call his co-defendants to testify as witnesses for his defense, he did not "support this assertion with an affidavit or the existence of recorded testimony that a particular co-defendant would testify in a manner which would exculpate him." United States v. Arvantis, 676 F. Supp. 840, 848 (N.D. Ill. 1987). In United States v. Andrus, 775 F.2d 825, 847 (7th Cir. 1985), the Seventh Circuit explained that "[s]everance cannot be granted on the basis of a vague, unsupported assertion that a co-defendant would testify favorably in a separate proceeding." Here, Marsh has not even suggested that his co-defendants' testimony would be favorable, let alone supported that assertion with any evidence (Dkt. No. 35 at 2). And should his co-defendants wish to exercise their Fifth Amendment right against self incrimination, Marsh would have no right to call them as witnesses at trial. United States v. Shuford, 454 F.2d 772, 777 (4th Cir. 1971).

For the reasons discussed, the Court **DENIES** Marsh's motion to sever (Dkt. No. 35).

**C.    Motion for Speedy Trial**

Marsh seeks a speedy trial pursuant to 18 U.S.C. § 3161, et seq. (Dkt. No. 35 at 2). But as he has readily conceded in his motion (Dkt. No. 35 at 2), his trial is scheduled to start on May 20, 2019 (Dkt. No. 27), which is 63 days after his initial appearance and arraignment on March 19, 2019 (Dkt. No. 24). Because Marsh's trial is scheduled within 70 days of his initial appearance and arraignment as required by 18 U.S.C. § 3161(c)(1), the Court **DENIES** his motion for a speedy trial as **MOOT** (Dkt. No. 35).

**D.    Motion for Subpoena Powers**

Marsh "seeks subpoena power to obtain personnel files from all law enforcement officers who [will] testify at trial" (Dkt. No. 35 at 2). But as his motion readily concedes, this Court's "standard discovery order applies[] and the government is obligated to provide all Giglio material no later than 14 days before trial." Id. (citations omitted). Because Giglio materials will include any adverse information contained in an officer's personnel file that affects his or her credibility as a witness, the Court **DENIES** Marsh's motion for subpoena powers as **MOOT** (Dkt. No. 35).

**E.   Motion to Dismiss**

Finally, Marsh contends that the Indictment against him should be dismissed because (1) there allegedly are factual discrepancies contained within the discovery materials, and (2) there ostensibly was grand jury misconduct (Dkt. No. 35 at 3). Again, however, Marsh has failed to provide any facts or evidence to support his claims. Id. Nor could he. The grand jury transcripts have not yet been disclosed in the course of discovery. Id. Moreover, factual discrepancies, without more, are insufficient to warrant dismissal of an indictment. See United States v. Bonaventura, 337 F. Supp. 2d 209, 211 (D. Mass. 2003) ("Misstatements or discrepancies in testimony do not justify dismissing an indictment that is facially valid."). Accordingly, the Court **DENIES** Marsh's motion to dismiss (Dkt. No. 35).

### III. CONCLUSION

For the reasons discussed, the Court **DENIES** all of Marsh's pretrial motions (Dkt. No. 35) and **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: April 26, 2019.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE
